FILED
2012 MAR 23 P 3: 48
U.S. DISTRICT COURT
EASTERN DIST. TENN.
BY_____ DEPT. CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

Southern Division

ENAT NEGUSSIE, )
)
   Plaintiff, )
) Civil Action No: 1 : 12CV 91
v. )
)
KINDRED HOSPITALS LIMITED )
PARTNERSHIP, D/B/A KINDRED )
HOSPITAL-CHATTANOOGA, and ) JURY DEMAND
)
KINDRED HEALTHCARE SERVICES, INC., )
D/B/A KINDRED HOSPTITAL- )
CHATTANOOGA )
)
   Defendants. )
)

Collier/Lee

## COMPLAINT

Plaintiff Enat Negussie, by counsel, respectfully represents to the Court the following as her Complaint against defendants Kindred Hospitals Limited Partnership, d/b/a Kindred Hospital - Chattanooga and Kindred Health Services, Inc., d/b/a Kindred Hospital-Chattanooga (collectively, Kindred):

### Nature of Case and Jurisdiction

1. This is a suit by an employee against her former employer for national origin discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e) *et seq*.

2. Since the case alleges violation of a federal statute, it involves federal questions establishing jurisdiction under 28 U.S.C. §1331.

## Parties

3. Negussie is a resident of Hamilton, County, Tennessee. She is of Ethiopian national origin.

4. Kindred operates a long-term care facility in Chattanooga, Tennessee specializing in care for medically complex, chronically ill patients.

## Facts

5. Negussie emigrated to the United States from Ethiopia as a 20-year-old woman seeking an education. She is a Coptic Orthodox Christian. She has dark skin.

6. Negussie spoke halting English when she arrived in the U.S. At all times relevant to this suit, and continuing to the present, she speaks with a heavy accent. To U.S.-origin listeners, her accent is distinctly foreign.

7. Negussie earned a B.S. in mathematics from Southwestern Oklahoma State University and an associate degree in registered nursing from Chattanooga State. At all times relevant to this suit and continuing to the present she has been a registered nurse, licensed in Tennessee.

8. Negussie intended to return to Ethiopia after receiving an education, but terrible political, ethnic and religious strife in the country prevented her from doing so. Negussie married, and raised two children in Chattanooga. She became a U.S. citizen in 1992. She is now fifty-seven years old.

9. Negussie began working as a registered nurse (RN) for Kindred in April, 2001. She provided RN care for Kindred patients. Kindred terminated her employment August 12, 2010.

10. During her nine years of employment, Negussie received annual written performance evaluations meeting or exceeding standards at all times. Her May 5, 2010 Evaluation was signed by Nurse Manager Traci Nelson on May 2, 2010 and by Human Resources Manager Kellie McCambell on May 4, 2010. Nelson and McCampbell were the same Kindred managers who fired Negussie only three months later. Nelson, as confirmed by McCampbell, rated Negussie in May, 2010, as "meets" or "exceeds standards" on all performance metrics. In particular, Nelson and McCampbell rated her as exceeding standards on "(m)aintains the standard of nursing care and implements policies and procedures of the hospital and nursing department."

11. During her years of service to Kindred, Negussie witnessed warm relationships, common pleasantries, friendships and socializing by Nelson with U.S.-origin RNs, all of which Nelson never extended to her. She learned to accept this treatment as normal for a person like her with obvious linguistic and ethnic differences resulting from her foreign origin.

12. On August 12, 2012, Nelson summoned Negussie to her office for a meeting that included McCampbell. Nelson explained that an "audit" she herself performed on certain computer-entered patient assessments had shown Negussie with a much worse compliance rate than other RNs selected by Nelson. After a brief verbal exchange when Negussie tried to understand the issue and tried to explain her assessments, Nelson terminated her employment.

13. Normal practice and procedure for Kindred U.S.-origin RNs under Nelson's supervision was for policy violations – even those involving patient care standards – to be handled by progressive discipline. That is, the RN first received a verbal warning, followed by a written warning, followed by suspension and/or discharge.

14. In discharging Negussie, Nelson stated in writing that she had not previously discussed with Negussie her concerns about the assessments.

15. In addition, at the August 12, 2010 meeting, Nelson intentionally or with reckless disregard of Negussie's rights, characterized Negussie's statements as defiant. Any good-faith listener familiar with Negussie's speech from her national origin would have known, or easily discovered, that Negussie was not defiant. Instead, she wanted to comply with Kindred policies, as she had faithfully demonstrated over nine years.

## Title VII Violation

16. In discharging Negussie, while administering progressive discipline less severe than discharge to similarly-situated U.S.-origin RNs, Nelson treated Negussie worse than U.S.-origin RN's under her supervision.

17. Nelson and McCampbell failed to take Negussie's national-origin linguistic characteristics into account when evaluating her response to Nelson's accusations of October 12, 2010. Accordingly, they carelessly or intentionally mis-characterized her response based on her national origin, and discharged her.

18. Negussie's national origin was a motivating factor in Kindred's discharge of Negussie.

19. As a result of the national-origin discrimination against her by Kindred, Negussie has lost pay and benefits, suffered mental anguish, humiliation and embarrassment, and remains without employment as an RN.

20. For its national-origin discrimination against Negussie, Kindred is liable to Negussie for back pay and benefits, reinstatement to her RN position, or front pay and benefits in

lieu of reinstatement, interest, compensatory damages for mental anguish, embarrassment and humiliation, and attorneys' fees and expenses.

## Request for Relief

Wherefore, plaintiff Enat Negussie respectfully requests that the Court convene a jury to try her claim, and that the Court thereafter enter judgment for her against defendants Kindred Hospitals Limited Partnership and Kindred Health Care Services, Inc., both of whom do business as Kindred Hospital-Chattanooga, for her damages and for other relief as alleged in this suit, and for her attorneys' fees and costs.

Respectfully Submitted,

ENAT NEGUSSIE

By Counsel

_____
James M. Johnson
BPR #026147
620 Lindsay Street
Suite 210
Chattanooga, TN 37403
(423) 648 4093
(423) 648 4094 (fax)
jj@jamesmjohnsonatty.com

Counsel for Plaintiff